UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| PINNACLE INTERIOR ELEMENTS, LTD., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:09-CV-0430-G |
| PANALPINA, INC., | ) ) | **ECF** |
| Defendant. | ) ) | |


## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is the motion of the defendant Panalpina, Inc. ("Panalpina" or

"the defendant") to dismiss this case pursuant to Federal Rule of Civil Procedure

12(b)(3) or, in the alternative, pursuant to 28 U.S.C. § 1406(a) (docket entry 11).

For the reasons discussed below, the motion is granted.

## I.  <u>BACKGROUND</u>

Pinnacle Interior Elements, Ltd. ("Pinnacle" or "the plaintiff") is an importer

of custom hardwood-flooring products.  Notice of Removal ("Notice"), Exhibit C,

Plaintiff's Original Petition ("Petition") at 2.  Panalpina has served as Pinnacle's U.S.

Customs broker and adviser since 2003.  Petition at 2.  Pinnacle alleges that Panalpina failed to provide it with sound advice about the proper Customs classifications for its imported wood-flooring materials, submitted incorrect tariff classifications, made inaccurate duty payments, and otherwise failed to provide adequate Customs-brokerage services.  *Id.* at 3-4.

Pinnacle filed suit against Panalpina in the District Court of Dallas County, Texas, 116th Judicial District, on February 10, 2009.  Notice at 1.  Pinnacle claimed actual and exemplary damages based on allegations of breach of fiduciary duty, fraudulent inducement, negligent misrepresentation, and negligence.  Petition at 4-6.  Removal to this court was effected on March 6, 2009.  Notice at 5.  Panalpina filed this motion to dismiss shortly thereafter based on a forum-selection clause that is contained in three sets of documents that were created during the course of the relationship between Pinnacle and Panalpina.

First, on May 20, 2003, the parties entered into a power-of-attorney agreement entitled, "Power of Attorney for Customs and Export Forwarding Agent."  *See* Power of Attorney for Customs and Export Forwarding Agent Agreement ("Power of Attorney Agreement") at 1-2, *located in* Appendix to Defendant Panalpina, Inc.'s Motion to Dismiss and Memorandum in Support ("Appendix") at 20-21.  The power-of-attorney agreement states, "Grantor hereby acknowledges receipt of Panalpina's Terms and Conditions of Service," and that "[a]ll shipments are handled

- 2 -

pursuant to the Terms and Conditions of Service . . ..  The said Terms are

incorporated herein and made part of this Agreement and shall be binding upon the

Customer."  Power of Attorney Agreement at 2, *located in* Appendix at 21.  Paragraph

21 of the terms and conditions of service provides:

> **21.  Governing Law; Consent to Jurisdiction and Venue.**  These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of New York without giving consideration to principals [sic] of conflict of law. Customer and Company (a) irrevocably consent to the jurisdiction of the United States District Court and the State courts of New York; [and] (b) agree that any action relating to the services performed by Company, shall only be brought in said courts . . ..

Terms and Conditions of Service at 4, *located in* Appendix at 26.[1]  The power-of-

attorney agreement was signed by both parties.  Power of Attorney Agreement at 2,

*located in* Appendix at 21.

Second, on three occasions -- in 2003, 2005, and 2007 -- Pinnacle entered into

credit agreements with Panalpina.  *See* Credit Agreements, *located in* Appendix at 28-

29, 31, 33.  All three credit agreements were signed by Pinnacle.  *Id.*  Each credit

agreement reaffirmed that all shipments were handled pursuant to the terms and

conditions of service, incorporated the terms and conditions of service by reference,

---

[1]      The parties agree that this forum-selection clause is mandatory and exclusive.  See generally *Klinghoffer v. Mama Fu's Noodle House, Inc.*, 2004 WL 2583632, at *3 (N.D. Tex. Nov. 12, 2004) (Kaplan, M.J.) (finding that a similarly word forum-selection clause was "clearly mandatory").

and stated that the terms and conditions of service were binding on Pinnacle. *E.g.*,

Credit Agreement of May 20, 2003, at 1, *located in* Appendix at 28.

Third, each time Panalpina performed services for Pinnacle, Panalpina sent

Pinnacle an invoice, the front of which contained the statement, "All shipments

handled as per Terms and Conditions of Service as printed on the reverse side," and

the back of which featured a copy of the terms and conditions of service. *E.g.*, Invoice

of November 19, 2003, at 1, *located in* Appendix at 35.  Panalpina estimates that it

issued approximately 1,000 of these invoices to Pinnacle between 2003 and 2008.

Declaration of Chris Longua at 2, *located in* Appendix at 18.

Panalpina contends that the forum-selection clause contained in the terms and

conditions of service requires dismissal of this action.  Defendant Panalpina, Inc.'s

Motion to Dismiss and Memorandum in Support ("Motion") at 1.  Pinnacle

contends that the forum-selection clause does not encompass all of the causes of

action it alleges against Panalpina and that enforcement of the forum-selection clause

would be unreasonable under the circumstances.  Plaintiff Pinnacle Interior Elements,

Ltd.'s Response to Defendant's Motion to Dismiss and Memorandum in Support

("Response") at 11.[2]

---

[2]       The court takes note here of one issue that is not before it.  Panalpina
contends that this action was "improperly filed" in this court under Rule 12(b)(3)
and/or 28 U.S.C. § 1406(a).  Motion at 1.  Pinnacle has not argued in response that
Panalpina's motion to dismiss for improper venue should be denied on the ground
that venue was statutorily proper in this court -- specifically, because Panalpina

(continued...)

## II. ANALYSIS

### A. Enforceability of the Forum Selection Clause

In a diversity case such as this one, federal law governs the enforceability of forum-selection clauses. *Stewart*, 487 U.S. at 32; *Ginter ex rel. Ballard v. Belcher, Prendergrast & Laporte*, 536 F. 3d 439, 441 (5th Cir. 2008). Under federal law, forum-selection clauses are prima-facie valid and carry a "strong presumption of enforceability." *Haynsworth v. The Corporation*, 121 F.3d 956, 966 (5th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998); see also *Ginter*, 536 F.3d at 441. A party who seeks to overcome that presumption must carry the heavy burden of demonstrating that enforcement of the clause would be unreasonable under the circumstances.

---

[2](...continued)
admits that it is subject to personal jurisdiction here, *see* Answer of Defendant Panalpina, Inc. to Plaintiff's Original Petition at 3, ¶ IV. *See generally* 28 U.S.C. §§ 1391(a)(1), (c); *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29 n.8 (1988) (approving of the district court's ruling below that a forum-selection clause mandating venue in a different district could not support a motion to dismiss for improper venue under § 1406(a) "because the respondent apparently [did] business" in the district where the case was filed); *Southeastern Consulting Group, Inc. v. Maximus, Inc.*, 387 F. Supp. 2d 681, 683 (S.D. Miss. 2005) (concluding that "[i]t can reasonably be inferred from" footnote 8 in *Stewart* "that when a court has power to transfer a case to another federal court, a motion to dismiss for *improper venue* is not appropriate if venue is statutorily proper" (emphasis in original)). The Fifth Circuit has not yet decided the question of whether a valid forum-selection clause makes venue statutorily improper in a judicial district where a case otherwise might have been brought. *Chapman v. Dell, Inc.*, 2009 WL 1024635, at*3 (W.D. Tex. Apr. 15, 2009). The court declines to address whether venue is statutorily proper in the Northern District of Texas without the benefit of briefing from the parties on this point. See generally *Leroy v. Great Western United Corporation*, 443 U.S. 173, 180 (1979) (explaining that venue's status as a personal privilege makes venue-related arguments subject to waiver by the parties).

*Mitsui & Company (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (citing

*M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 10 (1972)); see also *Calix-*

*Chacon v. Global International Marine, Inc.*, 493 F.3d 507, 513 (5th Cir. 2007) ("'[A]

valid forum selection clause is given controlling weight in all but the most exceptional

cases.'" (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring))).  Enforcement of

a forum-selection clause is unreasonable under the circumstances only if (1) "the

incorporation of the forum selection clause into the agreement was the product of

fraud or overreaching;" (2) litigation in the selected forum would be gravely

inconvenient; (3) the "fundamental unfairness of the chosen law" would deprive the

plaintiff of a remedy; or (4) enforcing the clause would violate a strong public policy.

*Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585,

595 (1991), and *M/S Bremen*, 407 U.S. at 12-13, 15, 18).

Here, Pinnacle argues that requiring it to litigate this case in the courts of New

York would be gravely inconvenient.  Response at 8-11.  A forum-selection clause can

be unenforceable due to grave inconvenience for either of two reasons.  First, the

party challenging the clause's enforceability can show that the inconvenience was

unforeseeable at the time the contract containing the forum-selection clause was

executed.  *Stanley Computer Group, LLC v. Hoosier Freelance, Inc.*, 2002 WL 1461931,

at *5 (N.D. Tex. July 3, 2002) (Fish, C.J.) (citing *Design Strategy Corporation v. Nghiem*,

14 F. Supp. 2d 298, 300-02 (S.D.N.Y. 1998)); see also *M/S Bremen*, 407 U.S. at 16

("[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties . . . contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable."). Second, the challenging party can demonstrate that enforcement of the clause would effectively deprive that party of its day in court. *M/S Bremen*, 407 U.S. at 18.

In this case, Pinnacle argues both that the inconvenience was unforeseeable at the time the contract was made and that enforcing the forum-selection clause would deprive it of its day in court. As to the first point, Pinnacle contends that Mike Kearins -- Pinnacle's president and CEO, who signed the contracts with Panalpina on Pinnacle's behalf -- did not receive a copy of the terms and conditions of service, never "had the forum selection clause pointed out or explained to him," and thus did not know and could not have foreseen that Pinnacle was "consenting to the forum of the New York courts." Response at 3, 11. However, "[u]nder elementary principles of contract law, one is presumed to have read a contract that one signs: A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it." *In re Cajun Electric Power Cooperative, Inc.*, 791 F.2d 353, 359 (5th Cir. 1986) (citation omitted). The fact that the forum-selection clause was contained in the terms and conditions of service, which were incorporated by

reference into the contracts that Kearins signed, does not change the analysis. See

*Kessmann and Associates, Inc. v. Barton-Aschman Associates, Inc.*, 10 F. Supp. 2d 682,

690-92 (S.D. Tex. 1997) (holding that the plaintiff was bound by a forum-selection

clause contained in a document the plaintiff had not signed because that document

was unequivocally incorporated by reference into the contract between the plaintiff

and the defendant); *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 908 (Tex. App.--

Houston [14th Dist.] 2003, no pet.) (holding that where a series of agreements

"explicitly state[d] the Standard Terms and Conditions are attached," the plaintiffs

were "estopped to deny that the Standard Terms and Conditions were actually

attached" and could not claim "they were unaware the Standard Terms and

Conditions were part of the . . . agreements").

　　　As to the second point, Pinnacle contends that the forum-selection clause is

fundamentally unfair because Pinnacle has no offices or representatives in New York

and the "extreme inconvenience" and "extreme financial burden" of traveling to New

York would "significantly hamper" Pinnacle's ability to prosecute its claim.  Response

at 9-10.  Pinnacle also asserts that Panalpina selected New York as a forum in "a

subtle attempt to exclude potential fact witnesses from the litigation based on the

location."  *Id.* at 10.  The court finds that these claims do not support a finding that

New York is a gravely inconvenient forum.  "[T]he expense of trying a case in a

particular forum is insufficient to satisfy a party's burden" of proving that forum to be

gravely inconvenient. *Abramson v. America Online, Inc.*, 393 F. Supp. 2d 438, 443

(N.D. Tex. 2005) (Lynn, J.); see also *Vimar Seguros Y Reaseguros, S.A. v. M/V Sky*

*Reefer*, 515 U.S. 528, 536 (1995) (noting the Court's previous rejection of the

contention that "the cost and inconvenience of traveling thousands of miles 'lessens

or weakens plaintiffs' ability to recover'" (quoting *Shute*, 499 U.S. at 603 (Stevens, J.,

dissenting)) (brackets omitted)).  And the fact that Panalpina is incorporated under

the laws of the state of New York, Notice at 2, belies Pinnacle's assertion that

Panalpina selected the forum of New York for the purpose of excluding fact witnesses

from the litigation.  See *Carnival Cruise Lines*, 499 U.S. at 595 (rejecting the

contention that the defendant had selected its designated forum "as a means of

discouraging [the plaintiffs] from pursuing legitimate claims" on the ground that the

defendant had its principal place of business in the designated forum).  As a result,

the court finds that Pinnacle has failed to carry its heavy burden of showing that

enforcement of the forum-selection clause would be unreasonable under the

circumstances.

## B.  Scope of the Forum Selection Clause

Pinnacle next contends that, even if the forum-selection clause is valid, it does

not apply to this dispute.  Response at 2-8.  First, Pinnacle contends that the forum-

selection clause is inapplicable here because it is contained within contracts that do

not pertain to the aspects of its relationship with Panalpina that gave rise to this

action.  *Id.* at 2-4, 7-8.  Specifically, Pinnacle reads the power-of-attorney agreement as applicable only to shipping and freight forwarding, not to the brokerage-services and expert-advice components of the parties' relationship.  *Id.* at 7.  However, this contention is predicated on an overly narrow reading of both the power-of-attorney agreement and the terms and conditions of service.  Specifically, the power-of-attorney agreement is a broad grant of authority from Pinnacle to Panalpina to, *inter alia*, "generally transact Customs business" on Pinnacle's behalf.  Power of Attorney at 1, *located in* Appendix at 20.  In addition, paragraph two of the terms and conditions of service states that Panalpina "acts as the 'agent' of [Pinnacle] for the purpose of performing duties *in connection with*" not only "the entry and release of goods" but also "post entry services, the securing of export licenses, the filing of export documentation . . ., and other dealings with Government Agencies."  Terms and Conditions of Service at 1, *located in* Appendix at 23 (emphasis added).  When the phrase "in connection with" appears in a contract, it functions to expand the scope of the clause that it modifies to include anything that has a significant relationship to the subject matter of that clause.  See, *e.g.*, *Personal Security* & *Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d 388, 392-93 (5th Cir. 2002) (explaining that a provision in a contract requiring the arbitration of any dispute that arises in connection with the contract embraces all disputes between the parties having a significant relationship to the contract (citation omitted)); see also *Jones v. Francis*

*Drilling Fluids, Limited*, 642 F. Supp. 2d 643, 664 n.20 (S.D. Tex. 2009) (noting that the Fifth Circuit has "broadly construed language incidental or similar to the 'arising in connection herewith' language'" in maritime contracts "'to unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the contract" (quoting *Fontenot v. Mesa Petroleum Company*, 791 F.2d 1207, 1214 (5th Cir. 1986))).  Pinnacle's contention that this dispute arises from Panalpina's failure to provide satisfactory brokerage services and expert advice about the entry and release of goods establishes only that the subject matter of this dispute is one with a significant relationship to the entry and release of goods.  It follows from the plain language of the terms and conditions of service that the subject matter of this dispute is within scope of the power-of-attorney agreement.  Adopting Pinnacle's construction of the power-of-attorney agreement as governing only "the shipment and receipt of goods," Response at 7, would read the phrase "in connection with" out of that agreement.

Next, Pinnacle contends that the forum-selection clause is not broad enough to encompass all of the causes of action Pinnacle is alleging in this case.  Response at 5-7.  Whether a particular claim or cause of action falls within the scope of a forum-selection clause is a question of federal law.  *Ondova Limited Company v. Manila Industries, Inc.*, 513 F. Supp. 2d 762, 772 (N.D. Tex. 2007) (Fitzwater, J.) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir.), *cert. denied*, 531 U.S. 928

(2000)).  To determine whether a forum-selection clause applies to a particular cause of action, a court looks first to "the language of the parties' contracts." *Marinechance Shipping, Limited v. Sebastian*, 143 F.3d 216, 222 (5th Cir.), *cert. denied*, 525 U.S. 1055 (1998).  The language of the forum-selection clause is particularly important.  Clauses that extend to all disputes that "relate to" or "are connected with" the contract are construed broadly, while clauses that cover disputes "arising out of" or over "the implementation and interpretation of" the contract are construed narrowly.  *Pennzoil Exploration and Production Company v. Ramco Energy Limited*, 139 F.3d 1061, 1067 (5th Cir. 1998); *MaxEn Capital, LLC v. Sutherland*, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009).  Courts also look to the operative facts that underlie the alleged causes of action:  "If the *substance* of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Soil Building Systems v. CMI Terex Corporation*, 2004 WL 1283966, at *4 (N.D. Tex. June 9, 2004) (Fish, C.J.) (citation, international quotation marks, and brackets omitted) (emphasis in original).  When the plaintiff raises tort claims, the applicability of a contractual forum-selection clause to those claims "depends on whether resolution of the claims relates to interpretation of the contract." *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 754 (S.D. Tex.2002) (quoting *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir.1988)).

Here, the forum-selection clause encompasses each of the four causes of action -- breach of fiduciary duty; fraudulent inducement; negligent misrepresentation; and negligence -- that Panalpina alleges.  The clause is broadly worded, covering "any action relating to the services performed by" Panalpina.  Terms and Conditions of Service at 4, *located in* Appendix at 26.  And both the existence and the terms of the power-of-attorney agreement are relevant to each cause of action.  The breach-of-fiduciary-duty claim is predicated on the alleged existence of fiduciary relationship between Panlalpina as a Customs broker and Pinnacle as its principal.  Petition at 4. That duty is "statutorily imposed," Response at 2, and the relevant customs statute imposes a fiduciary duty via power-of-attorney agreements such as the one at issue here, see 19 C.F.R. § 141.46.  See also *Haynsworth*, 121 F.3d at 959, 961 (finding that a broadly worded forum-selection clause encompassed a breach-of-fiduciary-duty claim).  Both the fraudulent-inducement and negligent-misrepresentation claims pertain to statements made by Panalpina during the course of the negotiations that led up to the signing of the power-of-attorney agreement.  Petition at 5.  Even though both claims turn on pre-formation conduct, they are within the scope of the forum-selection clause because neither could be maintained if there were no contract between the parties.  See *Collin County v. Siemens Business Services, Inc.*, 250 Fed. Appx. 45, 47, 49-50 (5th Cir. 2007) (finding that a broadly worded forum-selection clause encompassed claims of fraudulent inducement and negligent misrepresentation).

Similarly, Pinnacle's negligence claim alleges that Panalpina breached a duty that it owed to Pinnacle as Pinnacle's Customs broker. Petition at 6. The source of that duty was the power-of-attorney agreement. "Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action." *Dos Santos v. Bell Helicopter Textron, Inc. District*, 651 F. Supp. 2d 550, 558 (N.D. Tex. 2009) (Means, J.) (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); see also *Carnival Cruise Lines*, 499 U.S. at 587-88, 595 (finding that a broadly worded forum-selection clause encompassed a negligence claim).

In sum, the forum-selection clause covers the entirety of the relationship between Pinnacle and Panalpina, and it encompasses all four causes of action that Pinnacle has alleged. As a result, the court finds that the forum-selection clause applies to this action.

## C.  Dismissal vs. Transfer

The final remaining question is how the forum-selection clause should be enforced. Panalpina has moved for dismissal under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, for dismissal under 28 U.S.C. § 1406(a). Motion at 1. Neither party has requested that, in the alternative to dismissal, the court transfer this case under either § 1406(a) or § 1404(a). "The district court has broad discretion in deciding whether to order a transfer" or to order dismissal, especially

where neither party has moved for transfer. *Caldwell v. Palmetto State Savings Bank of South Carolina*, 811 F.2d 916, 919 (5th Cir. 1987) (per curiam); see also *McClintock v. School Board of East Feliciana Parish*, 299 Fed. Appx. 363, 365 (5th Cir. 2008) ("We review a district court's dismissal of a complaint for . . . improper venue under Rule 12(b)(3) . . . for abuse of discretion.").

Courts are guided in the exercise of their discretion by the type of forum designated in the forum-selection clause. When a forum-selection clause designates a state-court forum, an arbitral forum, or a forum in a foreign country, the proper remedy is dismissal. *International Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 113-15 (5th Cir. 1996) (state-court forum); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 900 (5th Cir.), *cert. denied*, 546 U.S. 826 (2005) (arbitral forum); *M/S Bremen*, 407 U.S. at 2 (foreign forum). By contrast, when a forum-selection clause designates a federal-court forum, most district courts in this circuit have concluded that the proper way to enforce the forum-selection clause is via transfer under § 1404(a). See, *e.g.*, *Southeastern Consulting Group*, 387 F. Supp. 2d at 683-84; see also *Ellington Credit Fund, Limited v. Select Portfolio Servicing, Inc.*, 2007 WL 3256210, at *4 (W.D. Tex. Nov. 2, 2007) (collecting cases). Where, as here, a forum-selection clause allows suit to be brought in either the state or the federal courts of a different forum, the district courts in this circuit have arrived at conflicting decisions about how best to enforce the clause. Compare, *e.g.*, *Abramson*, 393 F. Supp. 2d at 440, 443 (ordering

transfer where the forum-selection clause designated "the courts of Virginia"), with

*VarTec Telecom, Inc. v. BCE Inc.*, 2003 WL 22364302, at *6 (N.D. Tex. Oct. 9, 2003)

(Lynn, J.) (initially ordering dismissal where the forum-selection clause allowed

litigation or arbitration only in the District of Columbia but then granting unopposed

motion to transfer to the District of Columbia).  Although *Abramson* is an exception,

in most cases where courts have granted a motion to transfer based on a forum-

selection clause that selected either the state or the federal courts of a different forum,

the forum-selection clause was worded so that there was only one possible transferee

federal court.  See, *e.g.*, *Southeastern Consulting Group*, 387 F. Supp. 2d at 682, 686

(granting a motion to transfer based on a forum-selection clause that designated the

"state and U.S. Federal courts for Fairfax County, Virginia"); *LaFargue v. Union Pacific*

*Railroad*, 154 F. Supp. 2d 1001, 1002-03 (S.D. Tex. 2001) (granting a motion to

transfer based on a forum-selection clause that designated "the courts of the State of

Nebraska," which is a single-federal-judicial-district state); see also *Wal-Mart Stores,*

*Inc. v. Qore, Inc.*, 2007 WL 2769835, at *1-*3 (N.D. Miss. Sept. 20, 2007) (refusing

to order dismissal under Rule 12(b)(3) but granting leave to re-file a motion for

transfer under §1404 where the forum-selection clause allowed an action to be

brought "only in the federal or state courts for Benton County, Arkansas"); *Dorsey v.*

*Northern Life Insurance Company*, 2004 WL 2496214, at *1, *10 (E.D. La. Nov. 5,

2004) (denying a motion to dismiss under Rule 12(b)(3) and ordering further

briefing on the plaintiff's motion to transfer venue under §1404(a) where the forum-selection clause mandated venue in "any court sitting in King County, Washington").

Here, the court opts to exercise its discretion to dismiss this action for two reasons. First, neither party has sought transfer, even in the alternative. The court is unaware of any case in which a court ordered transfer *sua sponte* despite neither party asking it do so. The court is not inclined to award relief that the parties have not requested. Second, the forum-selection clause at issue here states only that venue is proper in "the United States District Court . . . of New York." Terms and Conditions of Service at 4, *located in* Appendix at 26. New York is home to four different federal judicial districts. 28 U.S.C. § 112. In the absence of guidance from the parties, the court declines to interpose its own judgment as the particular forum in which this litigation should proceed. Accord *D.B. Incorporated v. National Administrative Solutions Corporation*, 2004 WL 865842, at *2 (N.D. Tex. Apr. 21, 2004) (Buchmeyer, J.) (concluding that "dismissal for improper venue, unaccompanied by a motion to transfer venue, is proper when a forum selection clause provides for venue" in "the federal or state courts located in Ohio," which is home to two federal judicial districts (citing *VarTec Telecom*, 2003 WL 22364302, at *6)).

## III.  CONCLUSION

For the reasons discussed above, the motion to dismiss is **GRANTED**.

- 17 -

**SO ORDERED**.

February 9, 2010.

A. JOE FISH
**Senior United States District Judge**